**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MECKLENBURG FARM, INC.,

        Plaintiff,

vs.                                       Case No. 3:07-cv-116-J-32HTS

ANHEUSER-BUSCH, INC., a
foreign corporation, and
NUTRI-TURF, INC., a foreign
corporation,

        Defendants.

## ORDER[1]

Before the Court is Defendant Nutri-Turf, Inc.'s Motion to Transfer the case to the United States District Court for the Eastern District of Missouri, brought pursuant to 28 U.S.C. § 1404(a). (Doc. 15.) The Court has considered the motion, the responses of the parties (Docs. 27, 29, 32, 33), and argument of counsel presented at a hearing held on August 20, 2007, the record of which is incorporated. (Doc. 31.)

**I.    Background**

Plaintiff Mecklenburg Farm, Inc. ("Mecklenburg Farm") is a milk farm located in Duval County, Florida. Mecklenburg Farm entered in a contract with defendant

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

Nutri-Turf, Inc. ("Nutri-Turf") to purchase silage and/or green chop to feed to the farm's milk-producing cattle.[2] The silage was grown on defendant Anheuser-Busch, Inc.'s ("Anheuser-Busch") property using discharged waste water from Anheuser-Busch's beer manufacturing plant in Jacksonville, Florida.[3]  Mecklenburg Farm alleges that the waste water used on the silage it purchased was contaminated and alleges that as a result, the cattle that ate the silage or were borne by cows that did, became ill and were unable to produce milk or to reproduce; some cows were stillborn or died as a result . (Docs. 2 at ¶¶ 10-18; 27-3 at 3; 27-4 at 3.)

---

[2] Attached to the complaint is what Mecklenburg Farm says is "[a] true and correct copy of the Contract," dated July 2, 1998. (Doc. 2 ¶ 10 and at 20.) Nutri-Turf contends the 1998 contract attached to the complaint is superceded by a July 5, 2000 contract, which is attached to Nutri-Turf's motion to transfer. (Doc. 15 at 2, citing 15-2 ¶ 15.) The July 5, 2000 contract provides:

> This Agreement . . . supercedes all prior or contemporaneous agreements in regard thereto and is intended as a final expression of [the parties'] agreement.

(Doc. 15-2 ¶ 15.)  Counsel for plaintiff represented that he was unaware of the existence of the later contract when the complaint was filed. Plaintiff, however, does not deny the later agreement.

[3] Nutri-Turf and Anheuser-Busch are sister corporations. Anheuser-Busch, a Missouri corporation, is a wholly owned subsidiary of Anheuser-Busch Companies, Inc. Nutri-Turf, a Delaware corporation, is a wholly owned subsidiary of Busch Agricultural Resources, Inc., which, in turn, is a wholly owned subsidiary of Anheuser-Busch Companies, Inc.  The principal place of business for both defendants, Anheuser Busch and Nutri-Turf, is St. Louis, Missouri. (Docs. 1 at 1 ¶ 2; 2 at 1 ¶¶ 2, 3; 29 at 2 ¶ 7.)

Mecklenburg Farm filed an eight count complaint,[4] alleging breach of contract, strict liability, breach of express and implied warranty of merchantability, and negligence against Nutri-Turf, and negligence, strict liability, and negligent design against Anheuser-Busch.  In its motion to transfer, Nutri-Turf relies upon the choice of forum clause included in the July 5, 2000 contract between Mecklenburg Farm and Nutri-Turf (attached to the motion).[5]  The mandatory forum selection clause in the 2000 contract provides:

> 13.   Governing Law.
>
> This Agreement will be deemed to have been executed in the State of Missouri and will be governed by and all disputes and differences which may arise hereunder shall be decided in accordance with the substantive laws of the State of Missouri, including the Missouri Uniform Commercial Code.  The parties agree that any legal action or proceeding with respect to this Agreement shall be brought in the United States District Court for the Eastern District of Missouri or, if such court does not have jurisdiction, in any court of general jurisdiction in the City or County of St. Louis, Missouri.  Buyer consents to the personal jurisdiction of such courts, agrees to accept service of process by mail and hereby waives any jurisdictional or venue defenses otherwise available to it.  Any action against the Seller under this Agreement or related to the Goods must be brought within one (1) year

---

[4]   Mecklenburg Farms originally filed its complaint in state court, in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida. Defendants removed the action to this Court, based upon diversity jurisdiction.  (Doc. 1.)

[5]   Defendant Anheuser-Busch consents to and joins in the motion to transfer, and urges transfer of the entire case as to all claims and all defendants.  (Docs. 29; 33.)

after the cause of action accrues.

(Doc. 15-2 at 4 ¶ 13.)[6]

## II. Discussion

### A. Enforcement of a Mandatory Forum Selection Clause Between Mecklenburg Farm and Nutri-Turf

"Section 1404(a)[7] is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(citation omitted). "Under Section 1404(a), the court should consider 'the convenience of parties and witnesses' and 'the interest of justice,' with a choice of forum clause 'a *significant* factor that figures *centrally* in the

---

[6] The Eleventh Circuit analyzes forum selection clauses under a "mandatory/permissive" test, enforcing mandatory clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract. Florida Polk County v. Prison Health Services, Inc., 170 F.3d 1081, 1083 n.8 (11th Cir. 1999). A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. In contrast, a mandatory clause dictates an exclusive forum for litigation under the contract. Global Satellite Communication Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004). The Court finds that the forum selection clause in the Agreement is mandatory.

[7] Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law under 28 U.S.C. § 1404(a). Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988); P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

district court's calculus. . . . . 'Thus, while other factors might "conceivably" militate against a transfer . . . the venue mandated by a choice of forum clause will rarely be outweighed by other 1404(a) factors.'" P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003)(quoting Stewart Organization, Inc., 487 U.S. at 29 and In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)(emphasis in original)). A valid forum selection clause should be given controlling weight and be enforced in all but the most "exceptional" cases. Stewart Organization, Inc., 487 U.S. at 33 (Kennedy, J., concurring); In re Ricoh Corp., 870 F.2d at 574. Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Moreover, a forum selection clause is valid absent fraud, undue duress, frustration of purpose, or some other common law doctrine that allows avoidance of an agreement. In re Ricoh Corp., 870 F.2d at 573-74. "A forum selection clause is reasonable if it neither causes unfair inconvenience to third parties nor implicates an interest of justice." Contraves, Inc. v. McDonnell Douglas Corp., 889 F. Supp. 470, 472 (M.D. Fla. 1995).

The party seeking a Section 1404(a) transfer bears the burden of proving the existence of a forum selection clause. The non-movant then has the burden of proving that the clause is either invalid or transfer is "sufficiently inconvenient to justify retention of the dispute." In re Ricoh Corp., 870 F.2d at 573. The party resisting the

application of the forum selection clause has a "heavy burden of proof." M/S Bremen, 407 U.S. at 17. A choice of forum that was made in an arm's-length negotiation by experienced and sophisticated businessmen should be honored and enforced by the courts "absent some compelling and countervailing reason." M/S Bremen, 407 U.S. at 12. "By enforcing the contractual forum, the Court is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff has already chosen." P&S Business Machines, inc., 331 F.3d at 807. "The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." Id.

Mecklenburg Farm "concedes only that there is no evidence that the forum selection clause was included in the contract as a result of fraud or coercion." (Doc. 27 at 8 n.8.) In the absence of any allegation or evidence to the contrary, the Court finds that the forum selection clause is valid and enforceable.

Plaintiff nevertheless urges that Nutri-Turf's motion to transfer should be denied because the conduct complained of occurred in Duval County, the witnesses are located in Florida, and the property, waste water, silage, Anheuser-Busch plant, and cattle at issue are all located in Duval County. Mecklenburg Farm argues that "[d]espite the existence of a forum selection clause, the interest of justice and fairness would not be served by transferring this action to St. Louis, Missouri." (Doc. 27 at 5.)

Here, the parties' forum selection clause was freely negotiated by

representatives of two substantial businesses[8] as part of the contract between them.[9] As noted by the Court in Contraves, Inc., supra, "a commercial transaction may result in the selection of an inconvenient forum for litigation for the dispositive reason that the agreed forum was the only one in which the parties could concur and 'but for' that selection the balance of the transaction either would not have occurred or the terms would have changed.  Therefore, despite the inconvenience to all concerned and despite the language of the statute, no facts appear that render the partes' choice of forum unreasonable and perforce unenforceable . . . ." Contraves, Inc. 889 F. Supp. at 474; accord Stewart Organization, Inc., 487 U.S. at 33 ("enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system")(Kennedy, J., concurring); M/S Bremen, 407 U.S. at 16 ("where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated . . . commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause

---

[8]   Plaintiff Mecklenburg Farm represented to Nutri-Turf that as a result of the allegedly contaminated silage, the farm has sustained at least $6.2 million in losses attributable to loss in cow numbers and milk production.  (Doc. 2 at 8 ¶ 53, 26.)

[9]   At oral argument, plaintiff stated that the owner of Mecklenburg Farm, Ingo Krieg, did not remember signing the 2000 agreement nor did he apparently realize that the forum selection clause was different than in the 1998 agreement.  However, Mr. Krieg is not disputing that he did sign the 2000 agreement nor is he claiming any type of fraud or overreaching in its execution.

unenforceable"); In re Ricoh, 870 F.2d at 573 (the district court must consider that the contract was "freely and fairly negotiated by experienced business professionals"). "A party opposing enforcement of a forum selection clause must 'show that the trial in the contractual forum will be so gravely difficult and inconvenient' that it 'will for all practical purposes be deprived' of its day in court. . . . 'Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to its bargain.'" Pods, Inc. v. Paysource, Inc., No. 8:05-CV-1764-T-27EAJ, 2006 WL 1382099, at * 4 (M.D. Fla. May 19, 2006)(citation omitted).

The contract between Mecklenberg Farm and Nutri-Turf was freely and fairly negotiated by experienced business professionals; plaintiff has failed to show a disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause. The admittedly inconvenient forum of Eastern District of Missouri was an item bargained-for by the parties in the event of litigation with the very characteristics - ie. location of witnesses, property, cattle, waste water and plant - which are of concern in this case.  Moreover, plaintiff has not shown or argued that enforcement of the forum selection clause would actually deprive them of their day in court. See McNair v. Monsanto Co., 279 F. Supp.2d 1290, 1302 (M.D. Ga. 2003)("[l]itigants are not necessarily deprived of their day in court because they have to use deposition testimony rather than live testimony at trial).  The parties not only agreed to a forum in Missouri, but also to the application of Missouri law in any

dispute arising between them. The Missouri forum is acceptable in that Nutri-Turf is a Missouri corporation with its principal place of business in St. Louis; both defendants are subject to the personal jurisdiction of the Missouri district court. (Doc. 28 at 2 ¶¶ 6,7.) See P & S Business Machines, Inc., 331 F.3d 808 (finding California venue reasonable when defendant corporation's business and headquarters located there). In short, this suit does not present "the type of 'exceptional' situation in which judicial enforcement of a contractual choice of forum clause would be improper." In re Ricoh Corp., 870 F.2d at 573 (citation omitted); see also Murray v. Quiznos Franchising LLC, No. 8:06-CV-717-T-26MAP, 2006 WL 1529540, at *3 (M.D. Fla. May 26, 2006); Pods, Inc., 2006 WL 1382099, at * 4.

### B.     Transfer of Claims Against Anheuser-Busch

Mecklenburg Farm alleges that defendant Anheuser-Busch is liable for negligence and strict liability for delivering defective and contaminated water to Nutri-Turf knowing that the water would be used by Nutri-Turf to grow silage, which in turn would be used to feed livestock including Mecklenburg Farm's cattle, the "expected . . . ultimate" and "foreseeable consumer[ ]." Further, plaintiff alleges that Anheuser-Busch negligently breached its duty to design a waste water and discharge system that would not contaminate waste water delivered to Nutri-Turf. (Doc. 2 at 12-17 (Complaint, Counts VI, VII, VIII).) Mecklenburg Farm makes clear in its complaint that it acquired the silage from Nutri-Turf that was allegedly contaminated by Anheuser-

Busch's discharged waste water pursuant to the contract between Mecklenburg Farm and Nutri-Turf at issue here.  (See Doc. 2 at 2 ¶¶ 10, 12.)  Mecklenburg Farm urges that if the Court transfers plaintiff's action against Nutri-Turf to the Missouri District Court, this Court should split the action and retain plaintiff's claims against Anheuser-Busch, a non-party to the forum selection clause.  (Doc. 32.)  The defendants collectively argue that the entire case should be transferred.  (Doc. 33 at 3.)

"'In order to bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound.'" Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)(quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)).  "'[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" Lipcon, 148 F.3d at 1299 (quoting Manetti-Farrow, Inc. v. Gucci Amerca, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

In McNair v. Monsanto Co., 279 F. Supp.2d 1290 (M.D. Ga. 2003), which presents a factual mosaic strikingly similar to this case, the court held that in the interest of justice, it would grant defendants' motions to transfer the entire case from the Middle District of Georgia to the Eastern District of Missouri based upon a mandatory forum selection clause, despite the fact that not all of the plaintiffs and defendants were parties to the agreement.  Twenty Georgia farmers brought the diversity suit in the Middle District of Georgia against three defendant companies

10

alleging that the cotton crop grown in Georgia from seed produced and sold by defendant Delta Pine and containing Monsanto's patented gene technology, failed. Delta Pine's principal place of business was Mississippi and Monsanto's principal place of business was St. Louis, Missouri. Each defendant filed a motion to transfer the case to the Eastern District of Missouri based upon a mandatory forum selection clause found in Monsanto's Technology Agreement, signed by fifteen of the plaintiffs, who agreed that the district court for the Eastern District of Missouri had exclusive jurisdiction for all disputes arising under the agreement and that Missouri law would govern. 279 F. Supp.2d at 1294-95. The court determined that the forum selection clause contained in the agreement between the fifteen plaintiffs and Monsanto was valid and enforceable. Id. at 1301-02, 1306. Citing Lipcon, supra, the court determined that defendant "Delta Pine is bound by the forum selection clause although it is not technically a party to the agreement between Monsanto and the Plaintiffs" because Delta Pine was a party "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." McNair, 279 F. Supp.2d at 1306 (citation omitted).

> Delta Pine produced and sold Plaintiffs the . . . cottonseed which contained the patented gene technology of Monsanto; therefore it is closely related to the dispute giving rise to Plaintiffs' claims and it was "foreseeable" that it would be bound by the forum selection clause. Plaintiffs' allegations against Monsanto and Delta Pine are inextricably intertwined with those asserted against Monsanto as evidenced by the allegations contained in

11

> Plaintiffs' Complaint which link all Defendants together. . . . Moreover, Delta Pine does not argue otherwise.

McNair, 279 F. Supp.2d at 1306-07.  The court determined that based upon its independent review of all factors including convenience of witnesses and ease of access to sources of proof, and in the interest of justice, it would transfer the entire action.  279 F. Supp.2d at 1311-14.  Accord Infectious Disease Solutions, PC v. Synamed, No. 1:07-CV-0211-WSD, 2007 WL 2454093, at *2 (N.D. Ga. Aug. 23, 2007)(transferring case pursuant to forum selection clauses which were not made unenforceable by plaintiff's addition of company officer as a defendant inasmuch as individual's "only relation to [plaintiff] is through the contracts" and individual was "closely related to the dispute and the contracts"); Vickers v. Wells, No. Civ.A. 105CV0930RWS, 2006 WL 89858, at * 3 (N.D. Ga. Jan. 11, 2006)(finding that defendant, as president of the company that entered into the employment agreement with plaintiff, was "sufficiently 'closely related' to the contract and to this dispute" such that he was "plainly entitled to enjoy the benefits of the forum selection clause"); Detroit Coke Corp. v. NKK Chemical USA, Inc., 794 F. Supp.2d 214, 217 n.2 (E.D. Mich. 1992)(rejecting plaintiff's argument that forum selection clause should be disregarded because one of the defendants was not a party to the agreement because its "material involvement in the transactions at issue in this suit as alleged in Plaintiff's Complaint is expressly referenced throughout the Agreement" and transferring entire case).  Without question, Mecklenburg Farm's claims against

Anheuser-Busch, which are characterized by plaintiff as being "intrinsically intertwined" with its claims against Nutri-Turf, (Doc. 27 at 13), are so "closely related" to the gravamen of this dispute arising out of the contract containing the forum selection clause such that it is "foreseeable" that the all claims would travel together.

While it would seem that the logical and convenient place for the trial of this action would be in this Court, the law requires that the Court enforce the mandatory forum selection clause in this circumstance. Any inconvenience posed by the selected forum is one that Mecklenburg Farm has presumably considered, found reasonable, and agreed to accept. Where a valid mandatory forum clause exists, there is "no reason why a court should accord deference to the forum in which plaintiff filed its action. Such deference . . . would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system." In re Ricoh, Corp., 870 F.2d at 573. Furthermore, splitting the case to permit Mecklenburg Farm's action against Anheuser-Busch to remain here would undermine the convenience of the parties and the interests of justice. 28 U.S.C. § 1404(a). See Continental Grain Co. v. The Barge FBL-585, 364 U.S. 19, 26 (1960)("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that § 1404(a) was designed to prevent").

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1. Nutri-Turf, Inc.'s Motion to Transfer (Doc. 15) is **GRANTED**.

2. The Clerk shall **TRANSFER** this entire action to the United States District Court for the Eastern District of Missouri, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of October, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record